**[Cite as *State v. Doerschuk*, 2021-Ohio-3686.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 20AP-553 |
| v. | : | (C.P.C. No. 19CR-3995) |
| Matthew J. Doerschuk, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 14, 2021

**On brief:** *Dave Yost*, Attorney General, and *Sarah L. Leatherman*, for appellee.

**On brief:** *Brian J. Rigg*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Matthew J. Doerschuk, appeals a judgment of the Franklin County Court of Common Pleas convicting him, pursuant to jury verdict, of workers' compensation fraud and grand theft. For the reasons outlined below, we affirm.

{¶ 2} On March 15, 2018, appellant injured his right foot while performing his duties as a corrections officer for Geo Group, Inc. ("Geo Group"). That same day, appellant completed a "First Report of an Injury, Occupational Disease or Death" ("FROI") form to initiate a claim for workers' compensation benefits. At the top of the FROI form, the following warning appeared:

**WARNING:**

Any person who obtains compensation from BWC or self-insuring employers by knowingly misrepresenting or concealing facts, making false statements, or accepting compensation to which he or she is not entitled, is subject to felony criminal prosecution for fraud.

(Ex. 1.)

{¶ 3} Upon receipt of the FROI form, the Bureau of Workers' Compensation ("BWC") assigned April Smith, a claims service specialist, to determine which benefits, if any, to award appellant. On April 3, 2018, Smith telephoned appellant to review the information contained in his FROI form and to discuss his medical treatment. During the conversation, Smith asked appellant routine questions about his employment for the year preceding the injury, i.e., March 15, 2017 to March 15, 2018. Appellant disclosed that he worked for Geo Group and two other employers during that time period. Smith informed appellant that he would need to supply wage information from all three of his employers. Smith confirmed this requirement in an April 4, 2018 letter. In response, appellant submitted an "Injured Worker Earnings Statement" form stating that in addition to his current employment with Geo Group, he was presently employed by Clemente Ambulance Service and was employed by KLG Mobile until October 8, 2017. Immediately above the line on which appellant signed, the form stated the following:

I understand any person who knowingly makes a false statement, misrepresentation, concealment of fact or any other act of fraud to obtain compensation as provided by BWC or self-insuring employers, or who knowingly accepts compensation to which that person is not entitled, is subject to criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment or both.

(Ex. 6.)

{¶ 4} Smith determined that appellant was entitled to temporary total disability ("TTD") benefits and informed him that he was required to complete a "Request for Temporary Total Compensation," commonly known as a "C-84" form. Between April 2 and August 13, 2018, appellant submitted seven C-84 forms through the BWC website. The C-84 form defined "working" as including "full or part-time, self-employment, income-producing hobbies, commission work, or unpaid activities that are not minimal and directly

earn income for someone else."  Following this definition, three questions were posed: (1) "Are you currently working in any capacity (as defined above)?"; (2) "Have you previously worked in any capacity (as defined above) during this requested period of disability?"; and (3) "If no, when was the last date you worked anywhere?"  On all but one of the C-84 forms, appellant checked the "No" boxes relating to the first two questions. Having checked the "No" boxes, appellant further reported March 15, 2018 as the last date he worked anywhere.  On the C-84 form submitted on April 24, 2018, appellant indicated that he had previously worked at Geo Group during the requested period of disability (which encompassed a 12-day period he returned to light-duty work); he further indicated that he was not currently working in any capacity.

{¶ 5}   At the bottom of the C-84 forms, immediately above the line on which appellant entered his electronic signature, the following language appeared:

> I understand I am not permitted to work while receiving temporary total compensation. I have answered the foregoing questions truthfully and completely.  I am aware that any person who knowingly makes a false statement, misrepresentation, concealment of fact or any other act of fraud to obtain compensation as provided by BWC or who knowingly accepts compensation to which that person is not entitled is subject to felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine, imprisonment, or both.

(Ex. 2.)

{¶ 6}   Appellant was informed of the prohibition against receiving TTD benefits while working in a May 16, 2018 letter from the BWC, which read in part:

> You are not entitled to temporary total benefits if you meet any of the conditions below.
>
> 1. You return to any type of work.  Working includes full or part-time employment, self-employment, income producing hobbies, commission work, paid or unpaid activities that are not minimal and directly generate income for you or another party. This includes employers other than the one you worked for when you were injured.

(Ex. 3.)

{¶ 7}   BWC issued paper warrants to appellant on March 16 and April 24, 2018. Thereafter, BWC issued 12 electronic warrants to appellant between May 16 and August 24,

2018. The initial electronic warrants were issued pursuant to appellant's May 17, 2018 enrollment in BWC's electronic benefits transfer ("EBT") debit card program, which BWC confirmed in a May 18, 2018 letter. That letter read in part:

> Fraud disclaimer/Terms of usage
>
> Under the terms of this agreement, BWC's deposit of your compensation Benefit(s) or your use of the EBT debit card constitutes payment of benefits under the provisions of Ohio statute. By receiving the electronic benefit card and accepting payments by this method, you agree that you are entitled to the benefits. You also agree to notify BWC should you become employed or otherwise ineligible to receive these benefits.

(Ex. 5.)

{¶ 8} The later electronic warrants were issued pursuant to appellant's June 11, 2018 enrollment in BWC's electronic funds transfer ("EFT") program. The enrollment form read in part:

> I agree under the terms of this agreement that deposit of my compensation payment(s) constitutes payment to me under the provisions of the Ohio Revised Code Section 4123.67. By signing this authorization, I agree that I am entitled to these benefits and will promptly notify BWC should I become employed or otherwise ineligible to receive such benefits.

*Id.*

{¶ 9} The form also included the following warning:

> Warning: I understand that any person, who obtains compensation from BWC or self-insuring employers by knowingly misrepresenting or concealing facts, making false statements or accepting compensation to which he/she is not entitled, is subject to felony criminal prosecution for fraud. By signing below, I certify that I have read and understand the statements above and agree with these conditions.

*Id.*

{¶ 10} BWC confirmed appellant's EFT enrollment in a June 12, 2018 letter, which included the following language:

> Fraud disclaimer/Terms of usage
>
> Under the terms of this agreement, BWC's deposit of your compensation Benefit(s) to the Bank account you provided constitutes payment of benefits under the provisions of Ohio

> statute.   By receiving the electronic funds transfer and accepting payments by this method, you agree you are entitled to the benefits.   You also agree to notify BWC should you become employed or otherwise ineligible to receive these benefits.

*Id.*

{¶ 11} Between March 16 and August 26, 2018, appellant received TTD benefits totaling $13,215.57.  Appellant resigned from Geo Group effective August 28, 2018. As a result, his TTD benefits were terminated.

{¶ 12} At some point, BWC received notification from the Ohio Department of Job and Family Services ("ODJFS") that appellant was gainfully employed during the same period he was receiving TTD benefits.  BWC Special Agent Matthew Wallace investigated the allegations, pursuant to which he confirmed ODJFS's claim that appellant was employed by East Liverpool City Hospital, Clemente Ambulance Service, and Physicians Ambulance Service while receiving TTD benefits.

{¶ 13} In a December 3, 2018 telephone interview with Wallace, appellant admitted that he worked for all three entities during the same period he collected TTD benefits.  He averred he was not aware he was prohibited from working in any capacity while receiving TTD benefits; he thought he was prohibited only from working at his employer of record, Geo Group, because the job he performed there was outside his limitations and restrictions. Appellant stated it was his understanding he could work anywhere as long as the job was within his listed restrictions.  Appellant further admitted he did not disclose his outside employment on his C-84 submissions; he just signed his name to the forms without reading them.  Wallace memorialized the interview in a written report and then referred the matter to the Ohio Attorney General's Office.

{¶ 14} On August 15, 2019, appellant was indicted on one count of workers' compensation fraud in violation of R.C. 2913.48(A)(1) and (2), a fourth-degree felony, and one count of grand theft in violation of R.C. 2913.02(A)(3), a fourth-degree felony.

{¶ 15} The jury found appellant guilty on both counts, with the additional finding upon both counts that the value of the benefits appellant received from BWC was more than $7,500.  At the October 26, 2020 sentencing hearing, the trial court merged the offenses and the state elected sentencing on the workers' compensation fraud offense.   In its October 28, 2020 judgment entry, the trial court sentenced appellant to three years of

community control and ordered him to pay BWC $10,730.21 in restitution. The court also imposed a $3,000 fine and ordered payment of court costs.

{¶ 16} Appellant timely appeals, setting forth a single assignment of error for our review:

> The trial court erred when appellant was convicted by a jury against the manifest weight of evidence.

{¶ 17} Appellant's sole assignment of error challenges his convictions for workers' compensation fraud and grand theft as being against the manifest weight of the evidence.

{¶ 18} R.C. 2913.48 defines workers' compensation fraud and states that "[n]o person, with purpose to defraud or knowing that the person is facilitating a fraud, shall * * * [r]eceive workers' compensation benefits to which the person is not entitled [or] [m]ake or present or cause to be made or presented a false or misleading statement with the purpose * * * to secure workers' compensation benefits." R.C. 2913.48(A)(1) and (2). R.C. 2913.02 defines theft and states that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception." R.C. 2913.02(A)(3). If the value of the goods or services stolen is more than $7,500 but less than $150,000, a violation of R.C. 2913.48 or 2913.02 is a fourth-degree felony. Fourth-degree felony theft constitutes grand theft.[1]

{¶ 19} Appellant contends that his convictions are against the manifest weight of the evidence because his testimony established that "he did not know he was not permitted to be working while receiving the temporary total disability benefits and incorrectly filled out the C-84 forms, as he did not understand them." (Appellant's Brief at 8.) Appellant points to his testimony (which echoed the statements he made in his interview with Special Agent Wallace), that he did not know that his employment with East Liverpool City Hospital, Clemente Ambulance Service, and Physicians Ambulance Service made him ineligible for TTD benefits because he thought the prohibition against working was limited to working at Geo Group. Appellant argues that given his lack of knowledge and understanding regarding

---

[1] For purposes of the offenses for which appellant was convicted, the term " 'Deception' means knowingly deceiving another or causing another to be deceived by any false or misleading representation," and the term " 'Defraud' means to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." *State v. Bliss*, 10th Dist. No. 14AP-41, 2014-Ohio-4357, ¶ 16, fn. 1, quoting R.C. 2913.01(A) and (B).

eligibility for TTD benefits, he could not have formed the intent to deceive BWC in order to obtain the benefits he received. Accordingly, he did not purposely commit either workers' compensation fraud or grand theft. We disagree.

{¶ 20} A trier of fact may determine intent from the surrounding facts and circumstances. *State v. Dillon*, 10th Dist. No. 05AP-679, 2006-Ohio-3312, ¶ 22, citing *State v. Seiber*, 56 Ohio St.3d 4, 13-14 (1990); *State v. Drayer*, 159 Ohio App.3d 189, 2004-Ohio-6120, ¶ 9 (10th Dist.). Although appellant testified that he was unaware of his ineligibility for the workers' compensation benefits he received, the surrounding facts and circumstances proved otherwise. In its May 16, 2018 letter, BWC informed appellant that he was not entitled to TTD benefits if he returned to any type of work; the letter defined work to include full-time or part-time employment, and specified that it included "employers other than the one you worked for when you were injured." (Ex. 3.) In addition, the C-84 forms contained language alerting appellant that he was not permitted to work while receiving TTD benefits, and defined work as any full-time or part-time employment. In his C-84 submissions, appellant certified that he was not working in any capacity and that the last time he worked was March 15, 2018. Further, the enrollment form appellant submitted for EFT payments apprised him that he was to notify BWC if he became employed or was otherwise ineligible to receive TTD benefits. Letters from BWC confirming appellant's enrollment in its EBT and EFT programs contained the same language.

{¶ 21} Additionally, BWC documentation, including the FROI form, the "Injured Worker Earnings Statement" form, the C-84 forms, and the EFT enrollment form warned appellant that he would be subject to criminal prosecution if he knowingly made false or misleading statements, concealed facts, or accepted compensation to which he was not entitled.

{¶ 22} In addition to the documentary evidence, the trial testimony of individuals involved in administering appellant's TTD claim established that appellant was not forthcoming about his other employment. Brenda Badgley, a BWC claims specialist, testified that in numerous conversations with appellant during the period he was receiving TTD benefits, he never disclosed that he was working for any employer other than Geo Group, nor did he indicate on any of the C-84 forms that he was working. Badgley also

testified that it would be impossible for a claimant to simply sign the C-84 forms without reading and answering the questions. Carmen Galloway, the Managed Care Organization nurse case manager assigned to appellant's claim, testified that she had several conversations with appellant during the period he was receiving TTD benefits; in none of those conversations did appellant inform her that he worked for any employer other than Geo Group. Dr. Mark Smesko, appellant's physician of record, submitted several BWC "Physician's Report of Work Ability" forms documenting that appellant was unable to work. Dr. Smesko testified that he could not recall appellant ever informing him that he was working during the time period he was receiving TTD benefits.

{¶ 23} At trial, appellant admitted that he worked at East Liverpool City Hospital, Clemente Ambulance Service, and Physicians Ambulance Service during the time he was receiving TTD benefits but did not disclose that employment on his C-84 submissions. He further admitted that he answered all the questions on C-84 forms he submitted, including the question about whether he was currently working. He explained that he answered "No" to that question because he understood the language "as defined above" to relate only to Geo Group, the employer for whom he was working when he was injured. He further averred that he understood the language on the C-84 forms indicating that he was not permitted to work while receiving TTD benefits to mean that he could not receive income from Geo Group while receiving TTD benefits. Appellant also stated that Dr. Smesko never told him he was on "total disability" and that based on his conversations with Dr. Smesko, he had no reason to believe he could not work at any other jobs. (Tr. at 36.) In addition, appellant asserted that BWC claims specialist Smith did not inform him he could not work at any other jobs while receiving TTD benefits. Appellant denied that he intentionally defrauded BWC.

{¶ 24} When presented with a challenge to the manifest weight of the evidence, an appellate court, after " 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). An appellate court should reserve reversal of a conviction as being

against the manifest weight of the evidence for only the most "exceptional cases in which the evidence weighs heavily against conviction." *Id.*

{¶ 25} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. *State v. Williams*, 10th Dist. No. 02AP-35, 2002-Ohio-4503, ¶ 58. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. *State v. Covington*, 10th Dist. No. 02AP-245, 2002-Ohio-7037, ¶ 28.

{¶ 26} This court's acceptance of appellant's testimony that he did not know or understand that he was ineligible for workers' compensation benefits while he was gainfully employed outside his employment with Geo Group is critical to his manifest weight argument. Were this court to credit appellant's testimony over the state's evidence, then we necessarily would have to find that appellant did not intend to defraud the BWC. We decline to do so. Like the jury, we find the C-84 forms, the May 16, 2018 letter, and the documentation related to appellant's enrollment in the EBT and EFT programs constituted persuasive, credible evidence that appellant was aware that he could not simultaneously work and receive TTD benefits and, in doing so, intended to defraud the BWC. Accordingly, we conclude that appellant's convictions for workers' compensation fraud and grand theft are not against the manifest weight of the evidence. Consequently, we overrule appellant's assignment of error.

{¶ 27} Having overruled appellant's assignment of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, P.J., and MENTEL, J., concur.

———————————