[Cite as *State v. Childs*, 2024-Ohio-4699.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 23AP-485 |
| v. | : | (C.P.C. No. 18CR-5045) |
| Sophia R. Childs, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 23AP-486 |
| v. | : | (C.P.C. No. 19CR-6121) |
| Sophia R. Childs, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

_____

D E C I S I O N

Rendered on September 26, 2024

_____

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, *Michael A. Walsh*, and *Jeffrey D. Devereaux*, for appellee. **Argued:** *Michael A. Walsh*.

**On brief:** *L. Scott Petroff*, for appellant. **Argued:** *L. Scott Petroff*.

_____

APPEALS from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Sophia R. Childs, appeals from a judgment of the Franklin County Court of Common Pleas convicting her of illegal conveyance of drugs of

abuse onto grounds of a specified government facility, tampering with evidence, possession of cocaine, aggravated trafficking in drugs, and aggravated possession of drugs. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} Appellant was arrested on September 5, 2018 and charged in Franklin County Municipal Court with felony possession of controlled substances pursuant to R.C. 2925.11(A); that case was dismissed on September 14, 2018 for presentation to a grand jury. On October 12, 2018, a Franklin County Grand Jury indicted appellant on a single count of trafficking in cocaine, pursuant to R.C. 2925.03, a first-degree felony, with an accompanying forfeiture specification. The case was assigned case No. 18CR-5045 and serves as the basis for appellant's appeal under case No. 23AP-485.

{¶ 3} Over one year later, on November 22, 2019, a Franklin County Grand Jury indicted appellant on five more counts: illegal conveyance of drugs of abuse onto grounds of a specified government facility (hereinafter "illegal conveyance") pursuant to R.C. 2921.36, a third-degree felony; tampering with evidence, pursuant to R.C. 2921.12, a third-degree felony; possession of cocaine, pursuant to R.C. 2925.11, a fourth-degree felony; aggravated trafficking in drugs "to wit: Fentanyl" pursuant to R.C. 2925.03, a fourth-degree felony; and aggravated possession of drugs "to wit: Fentanyl" pursuant to R.C. 2925.11, a fifth-degree felony. (Nov. 22, 2019 Indictment at 2.) The second indictment was assigned case No. 19CR-6121 and serves as the basis for appellant's appeal under case No. 23AP-486. The trial court granted the state's motion for joinder of case Nos. 18CR-5045 and 19CR-6121 and renumbered the counts for trial as follows:

> Count One- Trafficking in Cocaine. Remains Count One from 18CR-5045.
>
> Count Two- Illegal Conveyance (formerly Count One of 19CR-6121)
>
> Count Three- Tampering with Evidence (formerly Count Two of 19CR-6121)
>
> Count Four- Possession of Drugs (formerly Count Three of 19CR-6121)
>
> Count Five- Aggravated Trafficking in Drugs (formerly Count Four of 19CR-6121)

> Count Six- Aggravated Possession of Drugs (formerly Count
> Five of 19CR-6121)

(Sept. 27, 2022 Renumbering Entry at 1.)

{¶ 4} Appellant moved to dismiss both of her cases in November 2021 based on violation of her statutory and constitutional right to a speedy trial, which plaintiff-appellee, State of Ohio, opposed. After a hearing, the trial court denied appellant's motion. The matter proceeded to a jury trial commencing September 19, 2022; appellant was represented by counsel.

{¶ 5} The state called six witnesses. Officers Mark George and Russell Weiner, both employed by the City of Columbus, Division of Police in the Narcotics Bureau, testified to being members of the tactical team that executed the warrant to search a Wheatland Avenue residence in Franklin County that ultimately led to appellant's arrest. Officer George explained he was part of an investigation into the Wheatland Avenue residence, which was suspected of serving as a "trap house," which essentially serves as a residential hub for the illegal sale of drugs. (Sept. 19, 2022 Tr. at 86.) The investigation included surveillance of the residence and several controlled buys of illegal drugs from a seller called "Q" using a confidential informant. (Sept. 19, 2022 Tr. at 204.) The information gained from the investigation allowed Officer George to obtain a warrant to search the Wheatland Avenue residence at about 9:00 p.m. on September 5, 2018.

{¶ 6} Officers Weiner and George's role with the tactical team entailed entering the residence as the fourth and fifth tactical team members, respectively, and searching the sole bedroom in the house. Both officers testified that appellant was the only person present in that bedroom. According to Officer George, when he entered the room appellant was on her knees, "hunched forward" over a black futon couch "making a furtive gesture"; Officer Weiner recalled appellant being half on the ground and half on the couch, but he could not see her hands. (Sept. 19, 2022 Tr. at 133, 122.) Officers recovered a bag containing over 41 grams of cocaine from the cushions of the black futon, which served as the basis for the first count of trafficking in drugs charged against appellant.

{¶ 7} More controlled substances and drug paraphernalia were discovered in the bedroom and throughout the residence. A table in the bedroom had a scale, a mirror with what appeared to be narcotics on it, a razor blade, a pen, and a plastic baggy with about 20

to 30 individually wrapped foil "leaflets," which Officer George initially thought contained heroin but was established after testing to be fentanyl. (Sept. 19, 2022 Tr. at 126.) In his experience, the drugs contained in foil leaflets were "packaged, ready for sale" in individual, ready-to-use doses, which indicated people in the home were distributing narcotics. (Sept. 19, 2022 Tr. at 153.) Officers discovered more individually wrapped foil leaflets elsewhere in the house, including 47 leaflets of what tested to be fentanyl near a water heater, as well as more bags of cocaine. Police found over $1,000 in cash in appellant's purse, over $1,000 of cash in the possession of a male present, defense witness Norman Henderson, and several hundred dollars, including a marked $20 bill from a controlled buy, in possession of a third occupant, "Q.W."

{¶ 8} Officer George handcuffed appellant and turned her over to a patrol officer, Darrel Kerns, who had been dispatched to the Wheatland Avenue residence to assist with transporting arrestees to jail. Kerns took appellant, still in handcuffs, from the residence to police department headquarters for fingerprinting and a photograph before proceeding to the Franklin County Corrections Center ("FCCC-II") for "slat[ing]." (Sept. 21, 2022 Tr. at 304.) According to Kerns, a sign posted on the vestibule door at FCCC-II notified entrants that bringing illegal substances into the jail would result in a criminal charge and, at that point, Kerns advised appellant to "deal with" anything illegal she had on her before going through those doors in order to avoid a criminal charge. (Sept. 21, 2022 Tr. at 306.) Appellant denied having contraband.

{¶ 9} Kerns stayed while FCCC-II employees began to process appellant for intake. A deputy for FCCC-II, Brandi Estep, led appellant through the "booking" process, which included a pat-down, paperwork, and taking her through a body scanner. (Sept. 21, 2022 Tr. at 282.) Appellant denied she had any contraband in or on her person. However, the image from the body scanner showed appellant had a foreign object approximately the size of a baseball that appeared to be in her vagina. When confronted about the object, appellant would fluctuate from denying anything was inside of her to saying it was tissue or toilet paper. Estep brought appellant into a holding cell to change from her civilian clothes into a jail uniform and asked appellant to remove the object inside of her. Appellant again fluctuated between denials and her toilet paper explanation. Estep asked her multiple times to remove the object, and appellant continued to refuse to cooperate. According to

Estep, at that point, "it appeared that she was going to remove something from her. But instead of removing it, she pushed it * * * further up inside of her body." (Sept. 21, 2022 Tr. at 285.)

{¶ 10} Estep did not complete the intake process and summoned her supervisor, who decided it was necessary to refuse appellant as an inmate due to the potential health risk posed by the object. Kerns then took appellant, handcuffed, from FCCC-II to Grant Medical Center.

{¶ 11} At the hospital, appellant told the emergency department nurse present, Roxy Decker, that she had tissue inside of her. Hospital staff notified Kerns that appellant refused to allow a pelvic exam, prompting Kerns to obtain a warrant at about 3:24 a.m. With a warrant secured, which essentially permitted a pelvic exam to look for drugs, Decker called in a nurse practitioner to lead the process and asked a female protective services member to be at the bedside.

{¶ 12} Appellant was advised about the warrant, and Kerns recalled that appellant stated she thought she could retrieve it herself but did not want to be "tied" to the bed. (Sept. 21, 2022 Tr. at 323.) Kerns stood outside of a privacy curtain while Decker and a female officer attempted to resolve the situation. According to Decker, appellant put her hands behind her and "clench[ed]" her bottom together. (Sept. 19, 2022 Tr. at 239.) Decker noticed something drop into a bedpan, but when Decker and the protective services officer tried to remove the bedpan, appellant "struggled" and "kick[ed] her legs." (Sept. 19, 2022 Tr. at 239.)

{¶ 13} Kerns, during this time, had been alerted that appellant was "attempting to hide something * * * between * * * her buttocks" and later that appellant had "something in her hands." (Sept. 21, 2022 Tr. at 323-24.) He testified that "[y]ou could hear [appellant] saying, I don't have anything" while the female protective services member from Grant told her to "[l]et it go." (Sept. 21, 2022 Tr. at 324.) Kerns entered the room, observed appellant laying on her side, and testified that "in her right hand she ha[d] [some object] clenched like a fist trying to conceal it behind, like, her leg area, saying, hey, I don't have anything. I don't have anything." (Sept. 21, 2022 Tr. at 324.) Kerns told appellant he would "[t]ase" her if she continued to conceal the object, and appellant let the object go. (Sept. 21, 2022 Tr. at 324.) Eventually, Decker grabbed a clear, plastic sandwich-type "baggy" that

contained multiple folded-up pieces of aluminum foil packets along with "some other powder substances." (Sept. 21, 2022 Tr. at 324-25.) Kerns testified that drugs packaged in folded-up aluminum foil are, in his experience, "typically used for narcotic sales" of fentanyl. (Sept. 21, 2022 Tr. at 325.) He submitted the baggy to the property room, requested that it be tested by the crime laboratory, and transported appellant back to FCCC-II, where she was taken into custody.

{¶ 14} A forensic scientist employed with the City of Columbus at the police crime laboratory, Kaitlyn Knapp, testified that she conducted an analysis on the items taken from the Wheatland Avenue residence and the baggy retrieved at the hospital and prepared a report with her findings. According to Knapp, the baggy retrieved at the hospital held other smaller bags that contained different substances. Using simplified descriptions, those included: (1) 4.131 grams cocaine; (2) 5.169 grams fentanyl; (3) 3.612 grams of a mixture of a type of morphine, fentanyl, and tramadol; (4) 0.908 grams cocaine; and (5) 50 pieces of foil each containing approximately .028 grams fentanyl. (State's Ex. Grant D-1 to D-4, Laboratory Report.) The 50 foil leaflets in the baggy retrieved at the hospital contained fentanyl with a net weight approximately equal to the foils found at the Wheatland Avenue residence.

{¶ 15} The state rested its case. Appellant called one witness, Norman Henderson, in her defense. Henderson testified he knows appellant—they were friends and in an off-and-on romantic relationship—and that he was there with appellant when she was arrested. According to Henderson, he received a recommendation to use "Mr. Q" for car repairs, and he and appellant took her car to the Wheatland Avenue residence owned by Mr. Q to resolve her car issues. (Sept. 21, 2022 Tr. at 477.) While appellant's car was being repaired, Henderson and appellant took a trip to Florida. When they returned, they went to Mr. Q's house on September 5, 2018 to pay for the repairs and retrieve the car. They brought dinner with them to share, which they ate in the bedroom with Henderson sitting with appellant on a bed and Mr. Q and his girlfriend sitting on the black futon couch. According to Henderson, Mr. Q answered his phone, put something by the couch, and headed to the kitchen. Henderson walked to the bathroom. At that point, Henderson testified that he saw people with black masks and suits come through the door. The police proceeded to

detain him, Mr. Q, and appellant and confiscate their cash.  The police ultimately arrested appellant and released Henderson and Mr. Q.

{¶ 16} Henderson explained the large amount of cash they had with them was leftover from the Florida trip and that appellant was going to use the cash to pay for the car repairs.  He testified that appellant did not abuse drugs and they both held jobs: Henderson had a seasonal job as a concrete finisher, and appellant worked at a cleaning service. He emphasized that appellant did not own or reside in the Wheatland Avenue residence.

{¶ 17} After defense rested its case and the parties' exhibits were admitted, the court read jury instructions and verdict sheets.  Neither party objected to the jury instructions. In part pertinent to this appeal, the jury instructions included:

> Before you can find the defendant guilty [of illegal conveyance of drugs of abuse onto grounds of a specified government facility in Count 2], you must find beyond a reasonable doubt that on or about the 6th day of September, 2018, in Franklin County, Ohio, the defendant knowingly, *without written authorization of the person in charge and contrary to the written rules conveyed onto the ground of a specified government facility*, in this case a detention facility, any drug of abuse.
>
> * * *
>
> Before you can find the defendant guilty [of aggravated trafficking in drugs in Count 5], you must find beyond a reasonable doubt that on or about the 6th day of September, 2018, in Franklin County, Ohio, the defendant knowingly prepared for shipment or prepared for distribution *fentanyl*, a controlled substance, including -- included in Schedule II, in this case *cocaine*, knowing or having reasonable cause to believe that such a drug was intended for sale or resale by herself or another.

(Emphasis added.) (Sept. 22, 2022 Tr. at 653-54.)

{¶ 18} The jury found appellant not guilty of Count 1, trafficking in cocaine related to the bag found in the black futon cushion, and guilty as to the remaining five counts pertaining to the drugs carried in her body.  Per the verdict forms, the jury found appellant guilty of those five counts "as she stands charged in the indictment." (Verdict Forms, case No. 23AP-485.)

{¶ 19} At the July 13, 2023 sentencing hearing, the state agreed Count 5 (aggravated trafficking in drugs) merged with Count 6 (aggravated possession) since "[t]hose are both for fentanyl that was recovered from [appellant] in multiple baggies." (July 13, 2023 Tr. at 6.) The state asked the court to sentence on Count 5—the more serious felony. The trial court, at the hearing, imposed a sentence of 24 months incarceration on Count 2, 24 months on Count 3, 12 months on Count 4, merged Counts 5 and 6, and imposed 12 months incarceration on Count 5 in accordance with the state's election. The trial court determined the circumstances of the case warranted running the sentences consecutively to each other for a total of 72 months incarceration, with 87 days of jail-time credit. The trial court issued the sentencing entry on July 20, 2023.

## II. Assignments of Error

{¶ 20} Appellant appeals and assigns the following four assignments of error for our review:

> [I.] The court improperly allowed the introduction of evidence that violated Evid.R. 1002 to the prejudice of Appellant where the statute specifically requires the violation of a written policy as an element of the offense and the improperly admitted evidence was the only evidence of that necessary element.
>
> [II.] Sentencing Appellant for drug trafficking and possession of cocaine violated R.C. 2941.25, and Appellants U.S. and Ohio constitutional right to be free from double jeopardy.
>
> [III.] There was insufficient evidence to support a conviction of Appellant in violation of her due process rights as guaranteed by the Ohio Constitution and the United States Constitution.
>
> [IV.] Appellant's right to speedy trial was violated because she was not afforded the opportunity of a trial within the time required by statute.

## III. Analysis

{¶ 21} Because certain assignments of error are threshold issues that could render further analysis unnecessary, we address the assignments of error out of order. As explained in detail below, our review of the assignments of error shows appellant's statutory speedy trial rights were not violated, sufficient evidence supported her illegal conveyance

and tampering with evidence convictions, and the trial court correctly decided to not merge Count 4 with Counts 5 and 6.

**A. Right to a speedy trial**

{¶ 22} In her fourth assignment of error, appellant contends her right to a speedy trial was violated because she was not afforded a trial within the time required by statute. The right to a speedy trial in criminal prosecutions is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. *State v. Smith*, 10th Dist. No. 19AP-170, 2021-Ohio-1936, ¶ 38. "In response to this constitutional mandate, Ohio * * * enacted R.C. 2945.71 to 2945.73, which designate specific time requirements for the state to bring an accused to trial." *State v. Baker*, 78 Ohio St.3d 108, 110 (1997).

{¶ 23} In the present case, appellant faced felony charges. Ohio law requires a defendant facing a "pending" felony charge to be brought to trial within 270 days of arrest. R.C. 2945.71(C)(2).[1] "A felony charge is not 'pending' under the statute until the accused has been formally charged by a criminal complaint or indictment, is held pending the filing of charges, or is released on bail or recognizance." *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 39 (10th Dist.). The arrest date is not chargeable to the state in computing speedy trial time. *Id*. at ¶ 45; Crim.R. 45(A); R.C. 1.14. For purposes of computing time under R.C. 2945.71(C)(2), each day during which the accused is held in jail in lieu of bail on the pending charge is counted as three days. R.C. 2945.71(E).

{¶ 24} "Speedy trial time may be waived by the defendant or tolled by operation of law," which are separate concepts. *State v. Juarez-Hernandez,* 10th Dist. No. 12AP-95, 2012-Ohio-4835, ¶ 9, citing R.C. 2945.71 and *State v. Blackburn*, 118 Ohio St.3d 163, 2008-Ohio-1823, ¶ 11. "While a defendant's waiver of speedy trial time requires an intentional relinquishment of a known right that must be expressed in writing or made in open court on the record, the tolling of speedy trial time under R.C. 2945.72 is automatic and extends the speedy trial time 'whether or not a waiver has been executed.' " *Juarez-Hernandez* at

---

[1] This case does not raise an issue concerning the latest version of R.C. 2945.71, which went into effect between the trial and sentencing in this case on April 4, 2023. The April 4, 2023 version of R.C. 2945.71(C)(2) makes an exception to the 270-day limit in accordance with R.C. 2945.73(C), which describes eligibility for release from detention and a 14-day savings period for the prosecution to bring a defendant to trial following a defense motion to dismiss on speedy trial grounds.

¶ 9, quoting *Blackburn* at ¶ 18. The circumstances in which the time for trial may be extended, in part pertinent to this case, include: "Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused"; and "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72(E) and (H).

{¶ 25} The speedy trial statutory provisions are mandatory and require strict compliance by prosecutors, as well as strict enforcement by the courts. *State v. Loel*, 10th Dist. No. 13AP-874, 2014-Ohio-3045, ¶ 6, citing *State v. Bayless*, 10th Dist. No. 02AP-215, 2002-Ohio-5791, ¶ 16. A defendant establishes a prima facie violation of his or her statutory speedy trial right by demonstrating that more than the permitted time elapsed before trial. *Glass v. Franklin Cty. Dept. of Animal Care & Control*, 10th Dist. No. 22AP-519, 2023-Ohio-4804, ¶ 24. The state then bears the burden of proving that time was sufficiently tolled to extend the speedy trial period. *Id.*

{¶ 26} Appellate review of a speedy trial claim involves a mixed question of law and fact. *State v. Long*, 163 Ohio St.3d 179, 2020-Ohio-5363, ¶ 15; *State v. Keaton*, 10th Dist. No. 16AP-716, 2017-Ohio-7036, ¶ 6. In this review, "we defer to the trial court's factual findings if they are supported by competent, credible evidence, but we review the application of the law to those facts de novo." *Long* at ¶ 15, citing *State v. Barnes*, 8th Dist. No. 90847, 2008-Ohio-5472, ¶ 17. Presented with a statutory speedy trial challenge, the appellate court is tasked with counting the number of days that have passed while determining to which party the time is chargeable as directed in R.C. 2945.71 and 2945.72. *State v. Pritchard*, 10th Dist. No. 12AP-695, 2013-Ohio-1255, ¶ 5, citing *State v. Gonzalez*, 10th Dist. No. 08AP-716, 2009-Ohio-3236, ¶ 9.

{¶ 27} Here, appellant argues the state failed to bring her to trial within the 270-day requirement of R.C. 2945.71(C)(2). Specifically, appellant contends that her "speedy trial clock" pertaining to the second indictment (19CR-6121), the source of her convictions, began to run on the date the first indictment (18CR-5045) was filed—October 12, 2018. (Appellant's Brief at 37.) She reasons that the second indictment relies on facts related to the first indictment, the allegations supporting each indictment are not factually distinct, and, at the time of the first indictment, the state possessed all the evidence necessary to

bring the charges in the second indictment. Appellant relies on *State v. Adams*, 43 Ohio St.3d 67 (1989), where the Supreme Court of Ohio held that a defendant's prior speedy trial waivers could not apply to subsequent charges based on the same set of circumstances because the defendant lacked sufficient knowledge to voluntarily relinquish rights as to charges of which he had no knowledge. *Id.* at syllabus.

{¶ 28} The state counters the state complied with the applicable statutory provisions since the speedy trial clock for the second indictment did not begin accruing days until indictment on that case, which was November 22, 2019. The state explains that *Adams* is distinguishable: *Baker*, 78 Ohio St.3d 108, clarifies the state is not subject to the speedy trial timetable of the first indictment when additional criminal charges arise from facts different from the original charges, which the state argues applies here since case No. 19CR-6121 involved post-arrest conduct. The state argues in the alternative that even accepting appellant's *Adams* argument, the state did not violate appellant's statutory speedy trial right considering the statutory tolling events that occurred in this case.

{¶ 29} We agree with the state's alternative argument: even if the two indictments share the same underlying facts and circumstances and the statutory speedy trial clock began to run upon appellant's initial arrest or first indictment, the state complied with R.C. 2945.71(C)(2) through application of statutory tolling events. "While a defendant's prior *waiver* of speedy trial time may not apply to a subsequent indictment arising from the same facts, the Supreme Court of Ohio has recognized that periods of *statutory tolling* attributable to a defendant in a prior case will also apply in a subsequent case based on the same underlying facts and circumstances." (Emphasis added/sic.) *Juarez-Hernandez* at ¶ 12, citing *Blackburn* at syllabus. Contrary to appellant's position, the *Blackburn* court explained that *Adams* is not a barrier to applying the tolling provisions of R.C. 2945.72. Rather, after considering *Adams*, the *Blackburn* court specified that "the tolling provisions of R.C. 2945.72 automatically apply regardless of whether [the defendant] waived time." *Id.* at ¶ 22. Therefore, any tolling periods attributable to appellant in the first case would also apply to the subsequent case. *Blackburn* at syllabus, ¶ 12; *Juarez-Hernandez* at ¶ 12.

{¶ 30} Numerous tolling events are evidenced in the records provided here. Columbus police arrested appellant on September 5, 2018. Therefore, adopting the most conservative view, the speedy trial clock began to run on September 6, 2018. *Pilgrim*, 184

Ohio App.3d 675 at ¶ 45; Crim.R. 45(A); R.C. 1.14.  Appellant was held in jail in lieu of bail on September 6 and 7, 2018, counting as six days.  R.C. 2945.71(E).  The municipal court dismissed the case on September 14, 2018, stopping the clock at 13 days.  *See State v. Ferguson*, 10th Dist. No. 16AP-307, 2016-Ohio-8537, ¶ 14, citing *Loel*, 2014-Ohio-3045, at ¶ 9-13 (explaining "we do not count the days between the municipal court dismissal and subsequent indictment").

{¶ 31} The grand jury indicted appellant in case No. 18CR-5045 on October 12, 2018, and the speedy trial clock restarted.  Appellant was held in custody from October 14 through 17, 2018, which, assuming she was not held on other charges, would again count as triple time.  Appellant was released, and the clock ran until December 17, 2018, when the parties filed a joint motion for a continuance.  The joint continuance lasted until February 13, 2019, tolling the speedy trial clock pursuant to R.C. 2945.72(H).  *State v. Dillon*, 10th Dist. No. 05AP-679, 2006-Ohio-3312, ¶ 34-35.  At that point, even with every assumption construed in appellant's favor, 89 days had run for statutory speedy trial purposes.

{¶ 32} Following the initial continuance, a mix of mostly joint, but some defense and good cause continuances tolled the statutory speedy trial clock from February 13, 2019 to September 19, 2022—the date of appellant's trial. *See* Feb. 13, 2019 Continuance (joint motion of parties for further negotiations); Apr. 11, 2019 Continuance (joint motion of parties due to defense counsel availability); June 10, 2019 Continuance (joint motion of parties due to discovery of new evidence); Aug. 20, 2019 Continuance (joint motion of parties for further negotiations and investigations and because new counsel was retained); Sept. 25, 2019 Continuance (joint motion of parties related to setting a definite trial); Nov. 18, 2019 Continuance (joint motion of parties to update discovery); Feb. 3, 2020 Continuance (joint motion of parties to finalize negotiations); Apr. 9, 2020 Continuance (court's motion due to Covid-19 health emergency); Sept. 3, 2020 Continuance (joint motion of parties due to unavailability of court); Feb. 3, 2021 Continuance (joint motion of parties for further negotiations and to set with another case); Mar. 17, 2021 Continuance (on defendant's motion); Apr. 8, 2021 Continuance (joint motion of parties); June 9, 2021

Continuance (joint motion of parties); July 19, 2021 Continuance (joint motion of parties);[2] Nov. 30, 2021 Continuance (joint motion for oral hearing on motions); Dec. 16, 2021 Continuance (joint motion of parties for further negotiations); Jan. 26, 2022 Continuance (joint motion of parties for further negotiations); Feb. 17, 2022 Continuance (joint motion of parties awaiting resolution of pending motion); Mar. 22, 2022 Continuance (joint motion of parties); July 18, 2022 Continuance (joint motion of parties for ongoing negotiations); and July 25, 2022 Continuance (joint motion of parties to reschedule trial).

{¶ 33} Aside from her timing contention concerning *Adams*, appellant does not argue any of these continuances otherwise fail to qualify under the statutory tolling provisions outlined in R.C. 2945.72. We note Covid-19 related continuances have been found to be "reasonable" and therefore appropriately tolled under R.C. 2945.72. *See S. Euclid v. I.N.*, 8th Dist. No. 111363, 2022-Ohio-4388, ¶ 30, quoting *In re Disqualification of Fleegle*, 161 Ohio St.3d 1263, 2020-Ohio-5636, ¶ 7 ("The Ohio Supreme Court has found that COVID-19 related orders and continuances tolling trials are permissible pursuant to R.C. 2945.72(H), which provides that speedy-trial time may be extended by 'the period of any reasonable continuance granted other than upon the accused's own motion' and that pandemic related continuances are 'reasonable.' ").

{¶ 34} Considering all the above, we find the state brought appellant to trial prior to 270 days expiring within the parameters of R.C. 2945.71 and 2945.72, even accepting appellant's starting point for the speedy trial clock. Therefore, appellant's assignment of error lacks merit. Accordingly, we overrule appellant's fourth assignment of error.

**B. Sufficiency of the evidence**

{¶ 35} In her third assignment of error, appellant contends insufficient evidence supported certain convictions in violation of her due process rights as guaranteed by the Ohio Constitution and the United States Constitution. She specifically challenges her convictions for illegal conveyance in Count 2 and tampering with evidence in Count 3.

{¶ 36} " '[S]ufficiency is a test of adequacy.' " *In re Z.C.*, 173 Ohio St.3d 359, 2023-Ohio-4703, ¶ 13, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). An appellate

_____

[2] The state's brief suggests the speedy trial clock resumed on November 22, 2021 and ran through November 29, 2021, for an additional 8 days, which brought the total to 97. Our review of the record shows the July 19, 2021 continuance covered the time period of August 30 to November 29, 2021. Either way, the state brought appellant to trial prior to 270 days expiring.

court must " 'determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' " *Thompkins* at 386, quoting *Black's Law Dictionary* 1433 (6th Ed.1990). The relevant inquiry is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Jordan*, 174 Ohio St.3d 347, 2023-Ohio-3800, ¶ 16; *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds* as stated in *State v. Smith*, 80 Ohio St.3d 89, 102 (1997), fn. 4. "If the state fails to present sufficient evidence on every element of an offense, then convicting a defendant for that offense violates the defendant's right to due process of law." *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, ¶ 13, citing *Thompkins* at 386-87. Whether legally sufficient evidence sustains a verdict is a question of law reviewed de novo on appeal. *Thompkins* at 386.

### 1. Illegal conveyance

{¶ 37} Under Ohio law, it is illegal to convey drugs of abuse or other prohibited items onto grounds of a detention facility or institution, among other buildings. R.C. 2921.36. The statute specifies, in part pertinent to this case:

> (A) No person shall knowingly convey, or attempt to convey, onto the grounds of a detention facility or of an institution, office building, or other place that is under the control of the department of mental health and addiction services, the department of developmental disabilities, the department of youth services, or the department of rehabilitation and correction any of the following items:
>
> * * *
>
> (2) Any drug of abuse, as defined in section 3719.011 of the Revised Code;
>
> * * *
>
> (B) Division (A) of this section does not apply to any person who conveys or attempts to convey an item onto the grounds of [those facilities] pursuant to the written authorization of the person in charge of the detention facility or the institution, office building, or other place and in accordance with the

> written rules of the detention facility or the institution, office building, or other place.

R.C. 2921.36(A)(2) and (B).

{¶ 38} Appellant does not argue the evidence in this case is insufficient to establish the elements of the crime stated in R.C. 2921.36(A)(2). Instead, appellant argues the offense of illegal conveyance also "requires that a defendant violate a written policy" pursuant to the exception stated in R.C. 2921.36(B). (Appellant's Brief at 27.) In appellant's view, "[t]he burden is on the state to prove two things: (1) a policy exists that provides for exceptions to the statute; and (2) an arrestee is not subject to the policy." (Appellant's Brief at 30.) Appellant contends the state "accepted this burden" at trial, but then only presented oral testimony of a sign hanging at the Franklin County Jail warning arrestees that bringing drugs into the jail is a possible criminal offense. (Appellant's Brief at 30.) Appellant argues this evidence, while sufficient to show "the existence of a policy," is insufficient to establish the content of the policy. (Appellant's Brief at 31.)

{¶ 39} The state counters the state must only prove the elements of R.C. 2921.36(A)(2) and is not required to disprove R.C. 2921.36(B), which is an exception to accommodate persons acting with written authorization in compliance with a written facility policy. The state contends the oral testimony concerning the warning sign was relevant to show appellant had the requisite mens rea to violate R.C. 2921.36(A). The state adds that no party can waive or change statutory criminal requirements.

{¶ 40} As a preliminary matter, we disagree with appellant's suggestion that the state "accepted th[e] burden" of proving R.C. 2921.36(B) at trial. (Appellant's Brief at 30.) "The elements of a crime are the constituent parts of an offense which must be proved by the prosecution to sustain a conviction." *State v. Draggo*, 65 Ohio St.2d 88, 91 (1981). "In Ohio, all criminal offenses are statutory, and the elements necessary to constitute a crime must be gathered wholly from the statute." *State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, ¶ 10, citing *Draggo*. *See, e.g.*, *State v. Mitchell*, 8th Dist. No. 108691, 2020-Ohio-4132, ¶ 25, 32-33 (reviewing a challenge to the sufficiency of the evidence under the correct statutory elements of crime and not erroneous jury instruction). Considering parties cannot waive or acquiesce to elements of a crime that differ from Ohio law, appellant's

argument in this regard lacks merit and is immaterial to whether the state nevertheless met its burden to produce evidence of the crime as stated by law.

{¶ 41} The remainder of the parties' conflict centers on the meaning of R.C. 2921.36 and, essentially, whether R.C. 2921.36(B) adds elements to the crime of illegal conveyance in which the state bears the burden of production. *See Messenger*, 2022-Ohio-4562, at ¶ 26, citing *State v. Messenger*, 10th Dist. No. 19AP-879, 2021-Ohio-2044, ¶ 44-45 ("[T]he sufficiency-of-the-evidence standard of review applies to [a party's] burden of production and a manifest-weight-of-the-evidence standard of review applies to [a party's] burden of persuasion.").

{¶ 42} "A court's main objective in applying a statute is to determine and give effect to the legislative intent." *Stewart v. Vivian*, 151 Ohio St.3d 574, 2017-Ohio-7526, ¶ 23. "The intent of the General Assembly must be determined primarily from the language of the statute itself." *Id*. at ¶ 24. In doing so, the court must read words and phrases in context, construe words in accordance with rules of grammar and common usage, and avoid inserting or deleting words to achieve a meaning. *Grandview Hts. v. Savko*, 10th Dist. No. 23AP-725, 2024-Ohio-2139, ¶ 10, citing *State ex rel. Choices for South-Western City Schools v. Anthony*, 108 Ohio St.3d 1, 2005-Ohio-5362, ¶ 40, and *State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, ¶ 10. " 'When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said.' " *Maple Hts. v. Netflix, Inc.*, 171 Ohio St.3d 53, 2022-Ohio-4174, ¶ 17, quoting *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, ¶ 12. *See State v. Bollar*, 171 Ohio St.3d 678, 2022-Ohio-4370, ¶ 28, quoting *State ex rel. Sears, Roebuck & Co. v. Indus. Comm.*, 52 Ohio St.3d 144, 148, (1990) ("We may not create ambiguity or 'modify an unambiguous statute under the guise of judicial interpretation.' ").

{¶ 43} "[W]here the words are ambiguous and are subject to varying interpretations, further interpretation is necessary." *State v. Chappell*, 127 Ohio St.3d 376, 2010-Ohio-5991, ¶ 16. The court, in determining the intention of the legislature within an ambiguous statute, "may consider among other matters," including the: "object sought to be attained"; "circumstances under which the statute was enacted"; "legislative history"; "common law or former statutory provisions, including laws upon the same or similar subjects"; "consequences of a particular construction"; and "administrative construction of the

statute." R.C. 1.49. " 'The interpretation of a statute is a question of law that we review de novo.' " *Netflix* at ¶ 17, quoting *Vivian* at ¶ 23.

**{¶ 44}** The statute section here, R.C. 2921.36(B), can be read in two ways: that the state must produce sufficient evidence to show the defendant lacked proper written authorization and did not act in accordance with the written rules of the detention facility to secure a conviction for illegal conveyance; or that the defendant must produce sufficient evidence that he or she acted pursuant to proper written authorization and in accordance with the written rules of the detention facility to excuse otherwise illegal conduct. *Compare State v. Nucklos*, 121 Ohio St.3d 332, 2009-Ohio-792, ¶ 1 (statute stating criminal offense "does not apply" is not an affirmative defense) with *State v. Hendrix*, 1st Dist. No. C-180503, 2019-Ohio-3301, ¶ 18 (statute stating criminal offense "does not apply" is an affirmative defense).

**{¶ 45}** Appellant relies on the Ohio Jury Instructions and associated comments to place the burden on the state, but "Ohio Jury Instructions do not control our analysis" and are non-binding. *State v. Fork*, 174 Ohio St.3d 224, 2024-Ohio-1016, ¶ 21. In arguing the opposite—that the defendant bears the burden of proving R.C. 2921.36(B) as an exception—the state cites to *State v. Cargile*, 123 Ohio St.3d 343, 2009-Ohio-4939, and several appellate district cases to establish the elements of illegal conveyance. The state additionally raises and distinguishes *Nucklos*, cited above. We agree with the state.

**{¶ 46}** Declining to elevate R.C. 2921.36(B) to an element of the crime of illegal conveyance comports with Supreme Court precedent and a deep roster of persuasive appellate court cases. The Supreme Court in *Cargile* established the actus reus—the physical components comprising the wrongful deed—for illegal conveyance without including the violation of internal written rules of the facility or lack of authorization as elements. *Id.* at syllabus ("A person who is taken to a detention facility after his arrest and who possesses a drug of abuse at the time he enters the facility meets the actus reus requirement for a violation of R.C. 2921.36(A)(2)."); *Black's Law Dictionary* (11th Ed. 2019) ("Actus reus" constitutes "[t]he wrongful deed that comprises the physical components of a crime and that generally must be coupled with mens rea to establish criminal liability.").

{¶ 47} We note that while *Cargile*, and later that year *State v. Cole*, 124 Ohio St.3d 98, 2009-Ohio-6411, ¶ 2, discussed warnings by officers, neither case referred to R.C. 2921.36(B), "written authorization," or "written rules of the detention facility." R.C. 2921.36(B). *See Cargile* at ¶ 13-14, 20; *Cole* at ¶ 2. Instead, those cases addressed a warning by an officer in context of determining whether a defendant's possession of drugs when he entered a detention facility was a voluntary act, as required by R.C. 2901.21(A)(1). *See Cargile* at ¶ 13-14, 20; *Cole* at ¶ 2. Regardless, on remand, the Eighth District Court of Appeals discussed the elements of illegal conveyance without mention of evidence of written authorization or written facility rules and determined that "nothing in the statutes or *Cargile* requires that the defendant be warned that conveying drugs into a detention facility is a separate crime from possession of drugs." *State v. Cole*, 8th Dist. No. 91305, 2010-Ohio-6639, ¶ 9.

{¶ 48} In line with *Cargile*, appellate courts addressing whether the state presented sufficient evidence to support an illegal conveyance conviction likewise omit reference to written authorization or written internal rules of the facility. *See, e.g., State v. Keister*, 2d Dist. No. 29081, 2022-Ohio-856, ¶ 68 (determining state's evidence, which established the appellant hid a baggie containing methamphetamine in his buttocks, brought it into the Montgomery County Jail, and lied to a corrections officer about it, was sufficient to support an illegal conveyance conviction and noting, "[n]othing in the statute requires law enforcement officers to provide [the appellant] warnings of the consequences of bringing drugs into the jail"); *State v. Daniels*, 3d Dist. No. 3-23-35, 2024-Ohio-1536, ¶ 16, quoting R.C. 2921.36(A)(2) (stating that to establish a conviction for illegal conveyance, the State must only prove that "the defendant 'knowingly convey[ed] * * * onto the grounds of a detention facility * * * any drug of abuse' "); *State v. Dodson*, 4th Dist. No. 18CA3629, 2019-Ohio-1465, ¶ 13 ("The three elements of illegal conveyance of drugs onto the grounds of a detention facility are: (1) knowingly conveying or attempting to convey; (2) a drug of abuse; and (3) onto the grounds of a detention facility."); *State v. Gadison*, 5th Dist. No. 2021CA00046, 2021-Ohio-3966, ¶ 16-22 (finding the state presented sufficient evidence, if believed by a rational trier of fact, to find the appellant conveyed a drug of abuse into the county jail without discussing written facility policy or rules); *State v. Maltos*, 6th Dist. No. H-18-023, 2019-Ohio-4900, ¶ 30, 33-34 (finding sufficient record evidence to demonstrate

the elements of illegal conveyance without discussing internal written facility rules); *State v. Whitacre*, 7th Dist. No. 21 MO 0008, 2023-Ohio-1029, ¶ 95 (evaluating sufficiency and weight of the evidence to support the appellant's conviction for illegal conveyance without referencing written facility rules); *State v. Burchell*, 9th Dist. No. 17CA011188, 2018-Ohio-2138, ¶ 4-6 (holding the state presented sufficient evidence to convict the appellant of illegal conveyance without requiring evidence of a written policy authorization); *State v. Shine*, 11th Dist. No. 2022-T-0079, 2023-Ohio-2261, ¶ 37-40 (determining sufficient evidence supported the appellant's conviction for illegal conveyance without reference to the state providing evidence concerning the written rules of the facility); *State v. Sheldon*, 12th Dist. No. CA2023-01-010, 2023-Ohio-2998, ¶ 32 (holding that sufficient evidence supported the appellant's conviction for illegal conveyance with no mention of evidence of written facility rules).

{¶ 49} The *Nucklos* case does not demand a different result. The statute at issue in *Nucklos* stated the offense of criminal drug trafficking "does not apply" to a licensed health professional who complies with certain applicable statutory or regulatory requirements. Citing the statutory definition of an "affirmative defense," the *Nucklos* court held that in order to convict a licensed health professional of drug trafficking, the state must prove that the health professional did not comply with "regulations that define the standard of care for prescribing controlled drugs to patients who have chronic pain." *Id.* at ¶ 15, citing R.C. 2901.05(D)(1)(b) (defining an "affirmative defense" as either "[a] defense expressly designated as affirmative" or "[a] defense involving an excuse or justification peculiarly within the knowledge of the accused, on which the accused can fairly be required to adduce supporting evidence"). As an example of the evidence needed to be produced by the state in that case, the court cited "expert testimony that there were insufficient records from which to conclude that [the licensed health professional] met the standard of care." *Id.* at ¶ 17. Moreover, *Nucklos* reached its result largely based on the desire to avoid placing an excessive burden on licensed physicians to avoid criminal liability for an otherwise legal action that benefits society. *Id.* at ¶ 16, 18-20.

{¶ 50} Unlike the statute at issue in *Nucklos*, the exception for illegal conveyance is premised on "written" authorization and rules. R.C. 2921.36(B). In essence, the General Assembly wrote the exception in such a manner that a person who legally conveys drugs

into a detention facility will have obtained the evidence needed to avoid or defend against a criminal charge. Further, the concern that motivated the *Nucklos* holding—avoiding reading the statute in a manner that would place an unreasonable burden on the practice of medicine generally—is not nearly as pronounced when considering illegal conveyance of drugs into state detention facilities and institutions. The class of people who need to convey a drug of abuse into a detention facility is narrow and, as previously noted, they have a clear method to avoid and defend against an illegal conveyance charge through obtaining and referencing written authorization in accordance with facility rules. To accept appellant's position—that the offense of illegal conveyance also "requires" the state prove "that a defendant violate[d] a written policy"—would make the existence of an internal facility rule a prerequisite to the crime. (Appellant's Brief at 27.) Following this logic, arrestees would not commit a crime by conveying illegal drugs and other prohibited items onto the grounds of a state detention facility, institution, office building, or other place that is under the control of certain state departments that lack written internal rules on this subject, potentially opening the door to the illegal conveyance of drugs into detention facilities. *See* R.C. 1.49(E) (permitting consideration of "[t]he consequences of a particular construction" in reviewing an ambiguous statute).

{¶ 51} With these considerations in mind, we conclude the state bears the burden to produce sufficient evidence to support the elements of R.C. 2921.36(A)(2) and is not required to produce sufficient evidence to disprove R.C. 2921.36(B). Applied in this case, the evidence presented, when viewed in a light most favorable to the prosecution, would allow a rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. Specifically, the evidence produced at trial showed appellant, on the night of September 5, 2018 into the morning of September 6, 2018, possessed a "baggy" containing cocaine and foil packets of fentanyl, both drugs of abuse under R.C. 3719.011, inside of her vagina when she entered FCCC-II. (*See* Sept. 21, 2022 Tr. at 308-10, 324-35 R.C. 3719.011(A); 3719.01(N)(1), (B)(B).) Appellant passed up the opportunity to end her possession of the drugs before entering the facility. (*See* Sept. 21, 2022 Tr. at 306-07; *Cole* at ¶ 5-10 (upholding a conviction under R.C. 2921.36(A)(2) where the defendant was aware of the physical presence of the drugs hidden in his jacket sleeve, did not reveal his possession of the drugs during any of the searches, and passed up opportunities to end his

possession of the drugs before entering the facility.)). Moreover, appellant does not contest that the state presented sufficient evidence to establish each element of illegal conveyance under R.C. 2921.36(A)(2). As a result, appellant's argument challenging the sufficiency of the evidence to support her illegal conveyance conviction fails.

### 2. Tampering with evidence

{¶ 52} Appellant was convicted of tampering with evidence pursuant to R.C. 2921.12(A)(1), which states in pertinent part "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."

{¶ 53} Appellant argues the state failed to prove the requisite mens rea by not producing evidence to demonstrate when the evidence was concealed and, as a result, failed to show appellant knew that an investigation was ongoing at the time she concealed the evidence. In support of her argument, appellant cites to *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, ¶ 2, which held that constructive knowledge of an impending investigation cannot be based solely on the commission of the underlying offense.

{¶ 54} In opposition, the state argues the jury could have found appellant guilty of tampering three ways: based on her conduct at the house; at the jail booking, when she pushed something further up inside her body; and, in the hospital after the warrant was issued, when she fought against removal and attempted to conceal the item.

{¶ 55} We agree with the state. At minimum, the state produced sufficient evidence to demonstrate appellant knew that an official proceeding or investigation was in progress or was about to be or likely to be instituted when she concealed drugs in her body at FCCC-II and the hospital. Appellant was arrested at a home where drugs were found, taken into custody, and warned against bringing drugs into FCCC-II. During the FCCC-II intake process, a body scan showed what appeared to be a foreign object inside of appellant. In a changing room, the officer asked appellant to remove the item, but appellant denied something was inside of her and ultimately "pushed [the item] further up inside of her body" instead of removing it. (Sept. 21, 2022 Tr. at 285.) Appellant was then taken to a hospital to address this potential medical issue, and the state was forced to procure a search warrant. Appellant was informed of the warrant but fought against removing the item and

attempted to "hide" the item that came out of her. (Sept. 21, 2022 Tr. at 323.) The item was recovered and identified as a baggy containing illegal drugs.

{¶ 56} The evidence presented, when viewed in a light most favorable to the prosecution, would allow a rational trier of fact to find the essential elements of the tampering with evidence proven beyond a reasonable doubt. As a result, appellant's argument challenging the sufficiency of the evidence to support her tampering with evidence conviction lacks merit. Accordingly, appellant's third assignment of error is overruled.

## C. Violation of Evid.R. 1002

{¶ 57} In her first assignment of error, appellant contends the trial court committed plain error in allowing the state to introduce oral evidence of a written policy in violation of Evid.R. 1002. The assignment of error is premised on appellant's assertion that "[a]n essential element of the offense of illegal conveyance requires a written policy to be violated." (Appellant's Brief at 19.)

{¶ 58} In addressing the third assignment of error, we concluded the state bears the burden to produce evidence to support the elements of illegal conveyance pursuant to R.C. 2921.36(A)(2) and is not required to disprove R.C. 2921.36(B), which instead provides an exception for persons that act with proper written authorization and in accordance with the written rules of the facility. This holding defeats the critical assumption underlying appellant's first assignment of error: because the state was not required to produce evidence of a written policy that appellant violated, the instant challenge to the oral evidence is without consequence. Accordingly, our determination on the third assignment of error has rendered appellant's first assignment of error moot. *See State v. Gideon*, 165 Ohio St.3d 156, 2020-Ohio-6961, ¶ 26 ("[A]n assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court."); App.R. 12(A)(1)(c)(directing that a court of appeals to decide each assignment of error and give written reasons for its decision "[u]nless an assignment of error is made moot by a ruling on another assignment of error").

## D. Failure to merge Count Four with Counts 5 and 6

{¶ 59} In her second assignment of error, appellant contends the trial court erred by imposing a sentence for both possession of cocaine in Count 4 and the merged aggravated

trafficking in drugs and aggravated possession of drugs offenses in Counts 5 and 6. She argues this error violated R.C. 2941.25 and her United States and Ohio constitutional right to be free from double jeopardy.

{¶ 60} As an initial matter, the parties agree that the sentencing entry contains clerical errors correctable by nunc pro tunc that are related to, but not necessary to resolve the limited issues raised in this assignment of error. " '[A] clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court.' " *State v. Clemonts*, 10th Dist. No. 19AP-406, 2020-Ohio-685, ¶ 23-24, quoting *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 30, citing *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, ¶ 15. Crim.R. 36.

{¶ 61} Pursuant to App.R. 9(E), "[i]f anything material to either party is omitted from the record by error or accident or is misstated, the parties by stipulation * * * or the court of appeals, on proper suggestion or of its own initiative, may direct that omission or misstatement be corrected." App.R. 9(E) may be used to correct clerical errors in trial court judgment entries. *State ex rel. Martre v. Reed*, 161 Ohio St.3d 281, 2020-Ohio-4777, ¶ 13 ("[O]ur * * * recent jurisprudence has clarified that App.R. 9(E) provides an adequate remedy for correcting a record" in a direct appeal, "thereby foreclosing mandamus relief."); *State v. Boyd*, 8th Dist. No. 82921, 2004-Ohio-368, ¶ 15 (determining that "App.R. 9(E) authorizes this court to direct that the misstatement be corrected" and ordering the trial court to correct the record with a nunc pro tunc entry to accurately journalize the jury's verdict); *State v. Schroeder*, 4th Dist. No. 18CA1077, 2019-Ohio-4136, ¶ 103, citing *State v. Scoggins*, 4th Dist. No. 16CA3767, 2017-Ohio-8989, ¶ 109 (instructing the trial court, pursuant to App.R. 9(E), to issue a nunc pro tunc sentencing entry that includes the required findings so as to accurately reflect the sentence imposed on the record during the sentencing hearing). *See also State v. Dejesus*, 8th Dist. No. 112043, 2023-Ohio-2485, ¶ 34-35, 38 (remanding case for the limited purpose of a nunc pro tunc entry where the parties agreed that the defendant "was sentenced on Counts 1 and 3 but the sentencing entry reflects that he was sentenced on Counts 1 and 2"); *State v. Heckathorn*, 7th Dist. No. 17 CO 0011, 2019-Ohio-1086, ¶ 99 (affirming convictions and remanding for the issuance of a nunc pro tunc sentencing entry with instructions to incorporate the consecutive sentencing findings made at the sentencing hearing in the entry).

{¶ 62} Here, in the sentencing entry, the trial court diverges from what occurred at the sentencing hearing in two ways. First, concerning Count 5, while the sentencing entry initially correctly states Count 5 constitutes "Aggravated Trafficking in Drugs," at a separate point the entry incorrectly states appellant is guilty of "Count Five of the Indictment, to wit: Aggravated Trafficking in Cocaine," when the indictment on that count specified fentanyl. (*Compare* Sentencing Entry at 1-2 with Nov. 22, 2019 Indictment at 2, Count Five Verdict Form at 1, Sept. 22, 2022 Tr. at 661-62, 675, and July 13, 2023 Tr. at 34, 48.) Second, the trial court correctly merged Counts 5 and 6 but, contrary to what occurred at the hearing, sentenced appellant on Count 6. (*Compare* Sentencing Entry at 2 with July 13, 2023 Tr. at 7, 48, 52.) We agree with the parties' characterization of these errors as clerical errors capable of correction though a nunc pro tunc entry to reflect what occurred at the sentencing hearing. Therefore, for sake of clarity in addressing the instant assignment of error and judicial economy in light of the parties' agreement on this issue, we direct the trial court to correct the sentencing entry, on page two, to reflect the proper description of Count 5, that being "Aggravated Trafficking in Drugs," and reflect that appellant was sentenced on Count 5 rather than Count 6 after merging those two counts. App.R. 9(E) and Crim.R. 36.

{¶ 63} With the incorrect labels in the sentencing entry clarified, we turn to appellant's arguments in support of her assignment of error concerning merger. The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution prohibit a criminal defendant from being tried twice for the same offense, including receiving multiple punishments for the same offense. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 10. The Ohio General Assembly enacted R.C. 2941.25 to help a court faced with sentencing a defendant on multiple offenses to determine whether the legislature intended to allow multiple punishments or whether those offenses should merge. *State v. Pendleton*, 163 Ohio St.3d 114, 2020-Ohio-6833, ¶ 11, citing *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 37. R.C. 2941.25, provides:

> (A) Where the same conduct by [a] defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶ 64}** Reviewing R.C. 2941.25, the Supreme Court held that a defendant may be convicted and sentenced for multiple offenses when either: "(1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Ruff* at ¶ 25. However, "if the General Assembly's intent is clear from the language of the statute creating the offense, there is no need to resort to the test provided in R.C. 2941.25." *Pendleton* at ¶ 11, citing *Brown* at ¶ 37. An appellate court reviews a trial court's decision as to whether multiple offenses merge pursuant to R.C. 2941.25 de novo. *State v. Taylor-Hollingsworth*, 10th Dist. No. 22AP-527, 2023-Ohio-4435, ¶ 10, citing *State v. Bailey*, 171 Ohio St.3d 486, 2022-Ohio-4407, ¶ 6.

**{¶ 65}** Here, appellant contends the trial court should have merged possession of cocaine (Count 4) with aggravated trafficking of drugs (Count 5), and aggravated possession of drugs (Count 6). She asserts that since the jury instructions describing the aggravated trafficking in drugs offense referenced both cocaine and fentanyl, "the jury convicted [a]ppellant of trafficking in both cocaine and fentanyl" under Count 5, which would therefore also merge with the possession of cocaine offense in Count 4 at sentencing. (Appellant's Reply Brief at 3.) Appellant additionally argues the offenses were not committed separately because the bindles of fentanyl and cocaine were found in the same bag and the state failed to show a separate animus for possessing the cocaine versus fentanyl. We disagree with appellant.

**{¶ 66}** To assess whether the trial court was obligated to merge Count 4 with Counts 5 and 6, we must first address appellant's attempt to redefine the nature of the offense underlying the aggravated trafficking of drugs charge in Count 5. Appellant is correct that the jury instructions for Count 5 referenced both fentanyl and cocaine. We initially note that instruction did not block the two drugs together but instead referenced each at separate points in a manner that, in context, is clearly a typographical error; counsel for both parties and the trial court acknowledged the error at the sentencing hearing.

{¶ 67} Regardless, the verdict forms show the jury did not convict appellant of aggravated trafficking of drugs involving both fentanyl and cocaine in Count 5, as she suggests. Instead, the jury found appellant guilty of "Aggravated Trafficking in Drugs *as she stands charged in Count Five of the indictment*." (Emphasis added.) (Count Five Verdict Form at 1.) The indictment specifies that renumbered Count 5 is "Aggravated Trafficking in Drugs * * * to wit: Fentanyl"—it does not reference cocaine. (Nov. 22, 2019 Indictment at 2.) The bill of particulars mirrors the indictment language. Furthermore, nothing occurred at trial that would indicate the aggravated trafficking of drugs offense in Count 5 encompassed both cocaine and fentanyl. Instead, the testimony at trial indicated that the many individual, ready-to-use aluminum foil leaflets containing fentanyl recovered at the hospital, which Officers George and Kerns discerned as being packaged to sell, supported the Count 5 aggravated trafficking in drugs charge. With these considerations in mind, we disagree with appellant that the typographical error in the jury instructions for Count 5 changed the nature of that offense to include cocaine in addition to fentanyl.

{¶ 68} Having established the nature of the drug-related offenses involved, we can now determine whether those offenses should have merged. "Ohio's statutes prohibiting drug possession and drug trafficking, R.C. 2925.03 and 2925.11, provide a unique context for the application of the Double Jeopardy Clause" due to the varying felony levels and associated punishments " 'depending on the type and amount of illegal substance' " underlying the criminal charge. *Pendleton*, 2020-Ohio-6833, at ¶ 18, quoting *State v. Taylor*, 113 Ohio St.3d 297, 2007-Ohio-1950, ¶ 14. When faced with a challenge to the trial court's merger decision involving drug-related offenses, an appellate court must analyze the defendant's conduct pursuant to *Ruff* but "also considers that the legislature 'has made it clear from its decision to create separate offenses based on drug classification that drugs of different types can be punished separately.' " *State v. Seawright*, 8th Dist. No. 109489, 2021-Ohio-1100, ¶ 13, citing *Pendleton*.

{¶ 69} Where the offenses at issue in a merger analysis involve different, separated drugs rather than drugs combined into one mixture, appellate courts generally hold that drug-related offenses should not merge under *Ruff* and R.C. 2941.25. *Compare Seawright* at ¶ 12 ("[U]nder the standard set forth in *Ruff*, trafficking offenses of different substances do not merge where the substances are packaged separately" and "offenses for

simultaneous possession of different types of drugs do not merge."); *State v. Jones*, 3d Dist. No. 1-23-17, 2024-Ohio-2959, ¶ 62 (determining that even though methamphetamine was discovered on the same day in the defendant's residence, the defendant could be punished separately for two aggravated possession offenses where the drugs found "were not only in different forms but they were also packaged separately") with *Pendleton*, 2020-Ohio-6833, at ¶ 20 (holding, in a case involving weight-based offenses and bags containing a mixture of fentanyl with other illegal drugs that could not be readily separated for evaluation, that "the imposition of two punishments for the same, singular quantity of drugs violated the Double Jeopardy protections of the Ohio and United States Constitutions").

{¶ 70} In this case, the counts appellant asserts should have merged involve different drugs: the Count 4 possession charge involved cocaine while the merged aggravated trafficking and aggravated possession counts both involved fentanyl. Furthermore, the drugs recovered at the hospital were packaged separately and in a different manner. The fentanyl was divided into small, individual foil packets as if for sale, and appellant possessed around twice as must fentanyl as cocaine.

{¶ 71} Consequently, we conclude the offense of possession of cocaine and the offenses of aggravated trafficking of drugs and aggravated possession of drugs related to the fentanyl packets are dissimilar in import or significance, and that appellant possessed the cocaine underlying Count 4 with a separate animus or motivation from the fentanyl underlying Counts 5 and 6. *Ruff* at ¶ 25; R.C. 2941.25. Therefore, the trial court did not err by declining to merge Count 4 with Counts 5 and 6 on the facts of this case. Accordingly, appellant's second assignment of error lacks merit.

## IV. Agreed dismissal of 23AP-485

{¶ 72} The trial court consolidated case Nos. 18CR-5045 and 19CR-6121 for trial, including renumbering the charges. However, the jury found appellant not guilty of the sole charge indicted in case No. 18CR-5045. The parties agree that 23AP-485, the appeal corresponding to case No. 18CR-5045, should accordingly be dismissed. We note the record for case No. 18CR-5045 was necessary for resolving the statutory speedy trial issue under the fourth assignment of error. However, because appellant's assignments of error necessarily only challenge her convictions, which arise under 19CR-6121 (23AP-486) alone, the parties are correct that 23AP-485 should be dismissed at this juncture.

**V. Conclusion**

{¶ 73} Having overruled appellant's second, third, and fourth assignments of error and determined her first assignment of error is moot, we hereby affirm the judgment of the Franklin County Court of Common Pleas. The case is remanded pursuant to App.R. 9(E) for the limited purpose of entering a nunc pro tunc order to correct the sentencing judgment entry with instructions included in this decision. Appellant's appeal instituted under case No. 23AP-485 is dismissed.

*Judgment affirmed;*
*limited remand for nunc pro tunc entry with instructions;*
*23AP-485 dismissed.*

MENTEL, P.J., and BOGGS, J., concur.